AO 106 (Rev. 04/10) Application for a Search Warrant

CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
DEC - 9 2020
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>1997 white Ford F-150 bearing KY tag 1090HT, VIN:<br>1FTDF15Y9SNA55640 | )<br>)<br>)   Case No. 1:20mj158<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Western_____ District of _____Virginia_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 922(a)(2) | unlawful interstate transportation of firearm by licensed dealer |
| 18 USC 922(t)(1)(A) | unlawful transfer of firearm before completion of background check |

The application is based on these facts:

See Attachment C

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Brandon Vines
Printed name and title

Sworn to before me ~~and signed in my presence~~ telephonically.

Date: 12/9/20

City and state: Abingdon, Virginia

_____
Judge's signature

Honorable Magistrate Judge Pamela Meade Sargent
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon Division

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A SEARCH WARRANT FOR A 1997 WHITE FORD F-150 BEARING KY TAG 1090HT, VIN: 1FTDF15Y9SNA55640 . | **FILED UNDER SEAL** <br><br> Case No. _____ |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Brandon Vines, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. Your Affiant, Brandon Vines, is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), United States Department of Justice, and has been employed in such capacity since December 2013. Your Affiant has successfully completed the Criminal Investigator Training Program and the ATF Special Agent Basic Training Academy at the Federal Law Enforcement Training Center, located in Glynco, Georgia, where your Affiant received specialized training in the investigation of federal crimes involving firearms, alcohol and tobacco diversion, arson and explosives and narcotics. Your Affiant is currently assigned to the Washington Field Division, Bristol Field Office, which investigates violations of federal firearms laws, violent crime and armed narcotics trafficking. During my tenure with ATF, one of my primary duties has been investigating firearms and narcotics trafficking enterprises. During my time with the ATF, I have received training on narcotics and firearms trafficking and the methods used by narcotics and firearms traffickers. In addition, I have been involved in arrests and interviews of narcotics and firearms traffickers. I have also been involved in wiretap investigations and the execution of search warrants in relation to narcotics and firearms trafficking. As a result, I am familiar with the manner and means of narcotics and firearms trafficking.

2. Prior to my employment with ATF, I was a sworn police officer with the Memphis Police Department for over five years. Throughout my career as a sworn police officer with the Memphis Police Department, I have participated in numerous investigations and prosecutions involving state firearms and drug-related offenses.

3. I am an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 United States Code, and am empowered by law to conduct

investigations and to make arrests for the offenses enumerated in Section 2516 of Title 18 United States Code.

4. I know that under 18 U.S.C. § 922(a)(2), it is unlawful, with certain exceptions, for any licensed dealer to ship or transport in interstate commerce any firearm to any person other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector. Additionally, I know that according to 922(t)(1)(A) a licensed dealer shall not transfer a firearm to any other person who is not licensed under this chapter, before the completion of the transfer, <u>the licensee contacts the national instant criminal background check system, and the system provides the licensee with a unique identification number</u>. When the unique identification number is assigned it indicates the transferee would not violate section (g) or (n) or State law.

5. Based on my training and experience and the facts, as set forth in this affidavit, there is probable cause to believe that Randy CAMPBELL has committed violations of Title 18, United States Code, Section 922(a)(2) and Title 18, United States Code, Section 922(t)(1)(A). There is also probable cause to search the 1997 Ford F-150 registered to Randy CAMPBELL, described in Attachment A, for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

6. In October 2019, ATF began investigating several individuals at the Indian Mountain Trade Center in Wise, Virginia, who appeared to be engaging in the business of selling firearms without a Federal Firearms License. The Indian Mountain Trade Center is located at 6988 Orby Cantrell Hwy, Wise, Virginia 24293. The flea market is in close proximity to Kentucky and is usually operated several days a week. The flea market is an open-air market with several large covered sheds. There were usually six to seven firearm vendors at the market every Wednesday, and usually the same firearm vendors from week to week.

7. During the course of the investigation, an Undercover (UC) Agent was approached by a Private Individual (herein referred to as PI # 2). PI # 2 provided the UC Agent a list of firearms that he had for sale. The UC Agent began buying firearms from PI # 2. On December 19, 2020, UC ATF SA Stephen Levesque purchased five firearms from PI # 2 in Abingdon, VA. The firearms SA Levesque purchased from PI # 2 included a Palmetto State Armory, Model PA-15 rifle bearing serial # PA195813. According to the ATF Firearms Trace Summary, the rifle was purchased from Campbell Gun Orders on December 18, 2019. Campbell Gun Orders is owned and operated by Randy CAMBELL, located at 34 Turkey Creek, Hallie, KY 41821.

8. On July 23, 2020, ATF SA Vines attempted to interview CAMBPELL at Campbell Gun Orders. Upon arriving at the business, SA Vines was unable to locate anyone. SA Vines called the telephone number (276-275-3150) listed for the business and spoke with Randy CAMPBELL. CAMPBELL stated that he was in Pikeville, KY and would not return until later in the evening. CAMPBELL asked SA Vines what he was calling about. SA Vines

asked CAMPBELL if he was familiar with Roger DOTSON. CAMPBELL said he has known Roger for a long time. CAMPBELL explained that ATF had recently contacted CAMPBELL while tracing several guns that DOTSON had purchased. CAMPBELL also said he heard ATF "raided" DOTSON at the flea market recently. SA Vines asked CAMPBELL how long DOTSON had been buying firearms from him. CAMPBELL said around 2016. CAMPBELL agreed to meet SA Vines near his place of employment the following week to further discuss the matters.

9. On July 28, 2020, SA Vines met CAMPBELL in a gas station parking lot near Duffield, VA. Upon meeting with CAMPBELL, SA Vines again explained to him that he was interested in knowing how many firearms Roger DOTSON had purchased from him. CAMPBELL brought his Acquisition and Disposition (A&D) book, which included his 2019 transactions. CAMPBELL said he didn't think SA Vines wanted to see the books for the previous years. CAMPBELL also compiled a list of firearms that were purchased by Dotson in 2019. CAMPBELL provided the list to SA Vines. While looking at CAMBELL'S A&D book, SA Vines referred to a Palmetto State Armory (PSA) PA-15 rifle purchased from CAMBELL's business on December of 2019 by PI #2. SA Vines explained to CAMPBELL the rifle was recovered by law enforcement shortly after PI # 2 purchased the rifle. SA Vines asked CAMPBELL if he was familiar with PI # 2. CAMPBELL said he couldn't "pick him (PI #2) out of a lineup." SA Vines questioned CAMBELL about four PSA PA-15 rifles purchased from him on December 18, 2019 by PI #2. SA Vines showed CAMPBELL the purchases by PI # 2 listed in his A&D book. SA Vines again asked CAMPBELL if he was familiar with PI # 2 or remembered anything about the purchase. CAMPBELL said he did not know PI # 2 nor was he familiar with the purchase.

10. On August 12, 2020, SA Vines and Task Force Officer (TFO) Parker interviewed PI # 2 at his residence, and they asked PI # 2 about the Palmetto State Armory rifle he purchased from CAMPBELL, which was recovered by Law Enforcement (SA Levesque UC purchase). PI # 2 said he knew CAMPBELL through Roger (Roger DOTSON). PI # 2 said he went to Blackey, KY to purchase the gun from CAMBELL. PI # 2 said CAMPBELL took him to his house. TFO Parker asked PI # 2 if DOTSON was with him when he bought the rifle. PI # 2 said he didn't believe DOTSON was with him. TFO Parker asked PI # 2 how many guns he bought from CAMPBELL. PI # 2 said the rifle was it (PI # 2 purchased four rifles during the single transaction in December 2019). TFO Parker asked PI # 2 if CAMPBELL called him to tell him the rifle had been traced. PI # 2 laughed and said, "Yeah." According to PI # 2, CAMPBELL said ATF called and told him the gun PI # 2 bought off him wound up in the hands of a felon. CAMPBELL told PI #2 ATF may come talk to him. PI # 2 said he has known CAMPBELL for two to three years, however, only met CAMPBELL twice. According to PI # 2, CAMPBELL knew PI# 2 and Roger were close, which is probably why CAMBPELL called him regarding the trace.

11. On August 17, 2020, at approximately 9:33 a.m., PI # 2 contacted SA Vines on his cell phone. PI # 2 told SA Vines he was worried sick thinking about the legal repercussions for his actions. SA Vines told PI # 2 it was really important for him to tell the truth

through the process. SA Vines said he didn't get the feeling PI # 2 was being truthful during the previous interview. PI # 2 paused for a short period before telling SA Vines he lied to investigators during that interview. PI # 2 said Roger told him what guns CAMPBELL had for sale. PI # 2 said he did not meet CAMPBELL in Kentucky like he previously told investigators. PI # 2 said he met CAMPBELL in Big Stone Gap, Virginia to purchase the rifles. SA Vines asked PI # 2 why he lied about meeting CAMPBELL in Virginia to purchase the rifles. PI # 2 said he was told to lie. SA Vines asked PI # 2 who told him to lie about it. PI # 2 said DOTSON told him to lie about it.

12. On September 09, 2020, SA Vines asked PI # 2 when was the last time he spoke to CAMPBELL. PI # 2 said he last spoke to CAMPBELL approximately one month ago. PI # 2 said the last thing they spoke about was the purchase of those guns (referring to four PA-15 rifles). PI # 2 explained that he called CAMPBELL to ask where he wanted him to say he purchased those guns if asked. PI # 2 began telling the events from the beginning surrounding the rifles purchased from CAMPBELL. PI # 2 said he met CAMPBELL in Big Stone Gap, VA and purchased the rifles. PI # 2 said DOTSON later told him one of the guns he sold turned up in the hands of a felon and ATF might contact him. PI # 2 said "they" later told him that if anybody ask him where he bought those guns to tell them he bought them in Blackey, KY. SA Vines asked PI # 2 who "they" were. PI # 2 went on to explain that DOTSON told him to say he bought the guns in Blackey, KY if anybody asked. PI # 2 said he later called CAMPBELL and asked him if he (PI # 2) bought the guns in Big Stone Gap or Blackey. PI # 2 said CAMPBELL told him "you make sure its Blackey." PI # 2 admitted he called CAMPBELL to make sure he told ATF what CAMPBELL wanted him (PI # 2) to tell ATF after DOTSON told him to say he bought the guns in Blackey, Ky. SA Vines asked PI # 2 if he had any further conversation with CAMPBELL. PI # 2 said he did not have a conversation with CAMPBELL regarding any other matter. SA Vines asked PI # 2 if he had to explain who he was to CAMPBELL when he called CAMPBELL. PI # 2 said CAMPBELL recognized him when he called. This is in contrast to when SA Vines interviewed CAMPBELL on July 28, 2020, and CAMPBELL told SA Vines he did not know PI # 2 and he couldn't "pick him out of a lineup."

13. Based on evidence CAMPBELL was selling firearms to Virginia residents outside of his licensed premise, ATF utilized a UC Agent to contact CAMPBELL in reference to a firearm purchase. On October 5, 2020, SA Levesque, acting in an UC capacity, called CAMPBELL (276-275-3150) in reference to a Rock River rifle CAMPBELL had listed for sale on E Classifieds. CAMPBELL did not answer the phone, but returned SA Levesque call shortly thereafter. SA Levesque told CAMPBELL he was interested in purchasing the Rock River rifle he had listed for sale. CAMPBELL said he sold the Rock River rifle SA Levesque was interested in buying. CAMPBELL asked if SA Leveque would be interested in a Smith and Wesson .223 caliber M4 rifle. SA Levesque said yes. CAMPBELL said he wanted $680 for the rifle and had plenty of extra magazines and a case. CAMPBELL said he worked at the Prison (US Penitentiary Lee County, VA, AKA: USP Lee) and would put the rifle and magazines in his vehicle so they could meet right after he got off work at 2:00pm. SA Levesque and CAMPBELL agreed to meet the following day in Duffield, VA.

14. On October 6, 2020, SA Levesque traveled to the Hardee's parking lot in Duffield, VA equipped with electronic recording equipment and US currency provided by ATF. At approximately 2:00pm, ATF SA Tabor observed Randy CAMPBELL leaving USP Lee driving his white 1997 Ford F150, KY registration, 1090HT. SA Tabor surveilled CAMPBELL from the prison to Duffield, stopping once to get gas. At approximately 2:15pm, CAMPBELL pulled into Hardee's parking lot and parked next to SA Levesque. CAMPBELL and SA Levesque exited their vehicles. CAMPBELL opened a toolbox that was in the bed of his truck and pulled out a cardboard gun-box. The box was taped up as if it had never been opened. CAMPBELL opened the box, placing it on the tailgate of his truck. SA Levesque identified the firearm, a Smith and Wesson Model M&P, 5.56 caliber rifle, SN: TP60920. There was one magazine in the box. SA Levesque and CAMPBELL agreed on a price of $700 for the rifle and three magazines.

15. CAMPBELL told SA Levesque he had to fill out some paperwork and handed him an ATF Form 4473, AKA: Firearms Transaction Record. SA Levesque handed CAMPBELL $700 in government funds and proceeded to fill out the Form 4473 using the information contained on his undercover identification. CAMPBELL then asked for SA Levesque's driver's license (DL). SA Levesque handed CAMPBELL his undercover DL. CAMPBELL noticed that SA Levesque's DL had been expired since April 2019. CAMPBELL asked if SA Levesque had any identification that was not expired. SA Levesque said he did not, that he has not been able to get a new DL because of COVID, even though his DL had been expired for a year prior to COVID. CAMPBELL continued as if it was not an issue.

16. CAMPBELL said he had to call in SA Levesque's information for a background check to make sure he was not a felon. CAMPBELL got into his truck to call in the information. After about five minutes, CAMPBELL got out of his truck and told SA Levesque his background check had been "delayed." CAMPBELL explained that sometimes the people doing the background checks need extra time to investigate someone's information. CAMPBELL said he was not supposed to give SA Levesque the firearm until his background check came back negative. Meaning, SA Levesque could not take possession of the rifle at that time because the transaction was not complete. CAMPBELL said if the ATF came and inspected him and he did not have the rifle to match the negative background check, he would be in trouble. CAMPBELL then said, "I've only been checked one time since 1996." SA Levesque said he was not worried about the background check, that it would come back negative. SA Levesque further said if there was a problem, he would bring the rifle back to CAMPBELL. CAMPBELL agreed to let SA Levesque take the rifle.

17. SA Levesque and CAMPBELL discussed further ammo and firearm purchases. SA Levesque said he was looking for a Glock handgun. CAMPBELL said he had a Glock 43, 9mm handgun in Kentucky. SA Levesque said, "I thought you lived in Jonesville (VA)." CAMPBELL said he had a place in Jonesville because he worked at the Prison. CAMPBELL said if SA Levesque wanted the Glock handgun, they would have to meet in Kingsport to do the paperwork.

18. As the meeting ended, CAMPBELL and SA Levesque got into their vehicles to leave. CAMPBELL flagged SA Levesque down saying he forgot to have him sign a line on the 4473. CAMPBELL explained the line SA Levesque was signing, was the portion of the 4473 stating the purchaser had passed the background check, even though SA Levesque had not yet passed. CAMPBELL told SA Levesque to sign, but not date the form. CAMPBELL said he would fill in the date when the negative response came back.

19. On the same date (10/6/20), records show CAMPBELL logged into the National Instant Criminal Background Check System (NICS) at approximately 4:01pm. At approximately 4:05pm, CAMPBELL called SA Levesque saying background check was clear, implying the sale was good.

20. On October 26, 2020, SA Levesque, acting in an UC capacity, called CAMPBELL, 276-275-3150. SA Levesque asked if CAMPBELL had any more rifles for sale, similar to the one CAMPBELL sold SA Levesque on 10/6/20. CAMPBELL said he had several Anderson lower receivers, complete lowers, and strip lowers. The complete lowers would be $195 each. CAMPBELL also said he had two AK-47 rifles for $1,000 each. CAMPBELL said, *"You'll be able to sell them things for a lot more than you got in them. There will be panic buying at that point."* CAMPBELL was referring to the upcoming presidential election when he made that statement. CAMPBELL agreed to sell SA Levesque two AK-47 rifles with spare magazines for $1,900.

21. CAMPBELL stated, *"Other day you remember you got delayed? But, you know you cleared later. What I'm going to do if it's alright with you, I'll tear that one up* (ATF Form 4473) *and if it makes any sense, you bought three guns that day."* It appears CAMPBELL was planning to have SA Levesque fill out a new ATF Form 4473 and put three guns on the form, the Smith and Wesson rifle from the 10/6/20 deal and the two new AK-47 rifles.

22. On October 28, 2020, ATF SA Levesque and CAMPBELL spoke on the phone. They agreed to meet in Weber City, VA on 10/30/2020 at 2:30pm. CAMPBELL said he already filled out an ATF Form 4473, and had called in SA Levesque's background check and it cleared.

23. On October 30, 2020, SA Levesque traveled to the gas station at the corner of US-58 and US-23 in Weber City, VA. Equipped with electronic recording equipment and $2,000 US currency provided by ATF, SA Levesque parked behind the gas station. CAMPBELL later asked SA Levesque to meet him at the Wendy's across the street.

24. At approximately 2:55pm, CAMPBELL arrived driving a silver Mazda and parked next to SA Levesque. CAMPBELL pulled out an ATF Form 4473 and said, *"I've got it all filled out for you."* The only portion not filled out was the name, address date of birth, height and weight. CAMPBELL further stated, *"You bought it (rifles) on the 28th by the way."* SA Levesque filled out the 4473 using his UC credentials. SA Levesque questioned CAMPBELL about the date on the 4473 being 10/28/20. CAMPBELL said,

*"Yeah, I called it in on (inaudible). I called it a couple days ago."* CAMPBELL was referring to the National Instant Criminal Background Check System (NICS).

   a. According to records, CAMPBELL called in a NICS check on 10/28/20 at approximately 2:49pm. He retrieved a "proceed" status at approximately 7:02pm the same day.

   b. Records also show CAMPBELL did not conduct a NICS check on 10/30/20.

25. CAMPBELL opened the trunk of his vehicle and pulled out two long gun boxes. SA Levesque opened one box and observed an AK-47 rifle with one magazine. CAMPBELL said he forgot the two extra AK magazines. However, CAMPBELL brought two extra AR magazines that would fit the rifle SA Levesque purchased on 10/6/20. CAMPBELL said the rifles were identical. SA Levesque said he wanted to open the second box to makes sure, stating, *"I'm getting this one for a buddy so I want to make sure it is alright."*

26. SA Levesque then counted out $1,900 in US currency provided by the ATF and handed the money to CAMPBELL. CAMPBELL also counted the money.

27. At the end of the deal, SA Levesque asked CAMPBELL to call him if he ran into anything that would interest SA Levesque. CAMPBELL asked what SA Levesque was looking for. SA Levesque stated, *"Anything I can make a dollar."* SA Levesque said prices might go up or down the next week, referring to the outcome of the presidential election. CAMPBELL stated, *"Well I tell you what, if he (Biden) wins, you about be able to name your price for them things."* CAMPBELL was referring to the two rifles he just sold SA Levesque. CAMPBELL further stated, *"If your buddy doesn't want that (rifle) anytime soon, you might want to hold off to see if Biden won."* SA Levesque said he was going to make $200 off the rifle he was buying for his buddy. CAMPBELL said SA Levesque could make a lot more than $200 from his buddy if Biden wins the election.

   a. The circumstances described by SA Levesque—namely, when one person purchases a firearm on behalf of another person—are referred to as a "straw purchase," and are a violation of federal law. CAMPBELL, who has been a licensed firearm dealer since 1996, would know that these circumstances are in violation of federal law and should not have allowed a "straw purchase" to take place.

28. ATF, through the use of an undercover Special Agent, purchased the following firearms from CAMPBELL outside of his business premise in Virginia:

   a. Smith and Wesson, model M&P Sport II, 5.56 caliber rifle, SN: TP60920
   b. Zastava, model Z-Pap, 7.62 caliber rifle, SN: Z70-122630
   c. Zastava, model Z-Pap, 7.62 caliber rifle, SN: Z70-122522

29. ATF SA Levesque examined each of the above firearms for purposes of determining classification under Title 18 U.S.C., Chapter 44 and whether each firearm has moved in

interstate or foreign commerce. SA Levesque determined that none of the above firearms were manufactured in the State of Virginia. It is the opinion of SA Levesque that if these firearms were received and/or possessed in the State of Virginia, they traveled in or affected interstate and/or foreign commerce.

30. In addition, according to invoices I have reviewed, all three firearms were sold and shipped to Campbell Gun Orders in Hallie, Kentucky before CAMPBELL sold them to SA Levesque in Virginia.

31. On November 17, 2020, investigators observed CAMPBELLS white Ford F-150, KY registration, 1090HT parked at 1212 Shavers Ford Rd. # 124 in Jonesville, VA 24263.

32. According to ATF Industry Operations, CAMPBELL is a registered Federal Firearms Licensee. Randy CAMPBELL is listed as the owner and responsible party for Campbell Gun Orders which is a firearm business located at 34 Turkey Creek, Hallie, KY 41821.

33. A query of the Kentucky Department of Motor Vehicles revealed the 1997 white Ford F-150 bearing KY tag 1090HT is registered to Randy CAMPBELL. On October 6, 2020, CAMPBELL transported a Smith and Wesson Model rifle in the 1997 Ford F-150 and subsequently sold the rifle to UC SA Levesque. When UC SA Levesque purchased the Smith and Wesson rifle from CAMPBELL he observed another rifle inside of the vehicle. Based on these observations, your affiant believes CAMPBELL utilizes the Ford F-150 to transport firearms to be sold to residents who reside outside of the state (Kentucky) in which his place of business is located.

34. Based on the information listed above, I believe that evidence listed in attachment "B" of this affidavit relating to violations, of Title 18 United States Code, Section 922(a)(2) and Title 18 United States Code, Section 922(t)(1)(A), will be located in the 1997 white Ford F-150 registered to Randy CAMPBELL, which is more fully described in Attachment "A" of this Affidavit.

_____
Brandon Vines
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to and subscribed before me, this ___telephonically 9th___ day of December, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

Seen by:

s/ Whitney D. Pierce, AUSA

## ATTACHMENT A

## DESCRIPTION OF PLACE TO BE SEARCHED

1997 white Ford F-150 bearing a KY tag of 1090HT, VIN: 1FTDF15Y9SNA55640. Below is a photo of the vehicle.



## ATTACHMENT B

### DESCRIPTION OF EVIDENCE TO BE SEARCHED FOR AND SEIZED

**Firearms**

Firearms and other items pertaining to the possession, purchase, sale or trade of firearms, including gun cases, magazines, holsters, spare parts for firearms, firearms cleaning equipment, photographs of firearms or of persons in possession of firearms, receipts, and records, for the purchase, sale, manufacture and/or repair of all these items.

**Records Relating to Firearms**

Any and all records relating to the possession, purchase, sale, or trade of firearms outside of his licensed business, including financial records and bank statements; documents and records that indicate or relate to the purchase and/or sale of firearms; U.S. currency, cashier's checks, and money orders; documents that could be used to advertise the sale of firearms.

**Electronics**

Electronic equipment, such as mobile telephones, GPS device, toll colleting transponder, and surveillance camera storage devices, and any information stored in memory or contained in any related hardware and software that could contain evidence related to CAMPBELL dealing firearms outside of his licensed premise.